### WILLIAM S. HENRY, JR.

#### *vs.*

### DAVID DENNIS.

#### Kennebec.    Opinion June 7, 1899.

*False Representations.    Deceit.    Sales.*

The defendant, in order to obtain credit of the plaintiffs for the Gardiner Woolen Company, of which the defendant was a director, represented in writing to the plaintiffs that "the mill was doing well" and that all the cloth they make is sold at a good, fair profit." Upon motion for a new trial heard before the full court it appeared that the testimony showed conclusively that, at the time when such representations were made, the company was hopelessly insolvent; that it was not doing well and that its cloth was not sold at a profit.

*Held;* that the verdict, which was for the defendant, was manifestly against evidence and the verdict is set aside and a new trial ordered.

ON MOTION AND EXCEPTIONS BY PLAINTIFF.

This was an action on the case to recover damages from the defendant for alleged false and fraudulent written representations made by him in relation to the standing of the Gardiner Woolen Company.

The case was tried to a jury in Kennebec county who returned a verdict for the defendant. The plaintiff filed a general motion for a new trial and took exceptions to certain portions of the charge to the jury. No report of the exceptions is required, as they were not considered by the court.

The case appears in the opinion.

*L. C. Cornish,* for plaintiff.

*A. M. Spear,* for defendant.

SITTING: PETERS, C. J., HASKELL, STROUT, SAVAGE, FOG-
LER, JJ.

FOGLER, J.    This is an action on the case to recover damages
from the defendant for alleged false and fraudulent representations
made by him in writing in relation to the standing and financial
responsibility of the Gardiner Woolen Company of Gardiner, a
corporation engaged in the manufacture of woolen goods.

August 14, 1896, the company ordered a quantity of wool of the
plaintiffs, merchants doing business in Boston.    The plaintiffs,
having no knowledge as to the condition of the company, on the
14th of the same month, wrote to the company a letter of inquiry
as to its standing and responsibility.    In reply to that letter the
defendant, who was a director of the company and president of the
Merchants National Bank of Gardiner, wrote and sent to the plain-
tiffs the following letter:

"GARDINER, ME., Aug. 24, 1896.
Messrs. W. S. Henry & Co., Boston.

Dear Sirs:    Mr. Brown has handed me your letter of 15th but
was sick at time and unable to answer.    In regard to the Gardiner
Woolen Co., any bill which you contract will be paid—the com-
pany lost considerably by Lewenburg & Co. which puts them
behind and makes them 'hard up', but the directors have too much
at stake to lose all for the small amount they owe outside of them-
selves—besides the mill is doing well.    All the cloth they make is
sold at a good profit.            Yours Truly,

DAVID DENNIS."

After the receipt of that letter the plaintiffs sold wool on credit
to the company as ordered until December 7, 1896, the date of
their last shipment.    December 12, 1896, the company closed its
mill and ceased to do business.    It was owing the plaintiffs at that
time $1812.21 for wool so sold and shipped.    No part of the debt
has been paid and the plaintiffs claim to recover of the defendant
damages to that amount.

In our opinion the testimony proves conclusively that at the
date of the defendant's letter, August 24, 1896, the Gardiner

Woolen Company was hopelessly insolvent and that such insolvent condition was known, or ought to have been known to the defendant who had been an active director of the company from its organization.

The Gardiner Woolen Company was incorporated in the interest of the Merchants National Bank in November, 1893, for the purpose, as its treasurer testifies, "of working out and saving a debt from W. C. Jack & Co. to the Gardiner National Bank." The capital stock was fixed at $75,000, of which two hundred and twenty-five shares, of the par value of $22,500, were issued to W. C. Jack & Co. in payment of the mill and plant theretofore owned and occupied by them, and then transferred to the company. Jack & Co. immediately transferred said shares to the Merchants National Bank as collateral for a debt of $7,500, which they owed to the bank. The only other stock issued by the company was issued and deposited as collateral for money borrowed by the company on its notes indorsed by its directors. The real estate conveyed to the company by Jack & Co. was subject to a mortgage for $7,400. The company shortly after receiving the conveyance from Jack & Co., having put in new machinery, commenced the manufacture of woolen goods and continued such manufacturing until it ceased to do business in December, 1896. It appears by a strong preponderence of the testimony that the business was unprofitable from its inception to its close. The company was unable, from lack of means during the period in which it was engaged in business, to meet its current expenses. It was obliged to give notes indorsed by its directors to pay insurance premiums and for steam power and various other current expenses; it was unable to pay even the interest on the mortgage debt existing upon its plant. The defendant had advanced nearly $2300 to meet a pay roll, and to pay over-due bills for stock in order to procure further credit from its creditors. On the 24th of August, 1896, the liabilities of the company were $39,741.70 of which about $30,000, was secured by the indorsement of the directors or guaranteed by them, and the balance unsecured. The defendant contends that the assets of the company amounted to $45,708.38.

In this estimate of assets several hundred dollars of worthless debts due the company are included. The mill, machinery, etc., are estimated at $39,000, which included the value of the plant at an appraisal when the property was purchased of Jack & Co. and paid for in stock by the company and the original cost of the additional machinery put in by the company. Nothing is deducted for depreciation in the value of the mill and machinery during its use of nearly three years by the company.

That the plant was of much less value than this estimate is evidenced by the fact that the Merchants National Bank, holding $10,000 of the company's notes, sued and attached upon only $7,000, the reason why attachments were not made on the other $3,000 being, as testified by Mr. Farrington, treasurer of the company and cashier of the bank: "No object in bringing suit. Nothing to attach." No part of the principal of the mortgage debt and no interest had been paid from November, 1892. Proceedings for a foreclosure of the mortgage had been commenced by the mortgagor, and judgment for possession had been recovered at the March term, 1896, of the Supreme Judicial Court in Kennebec county. The evidence satisfies us that the statement in the defendant's letter that "the mill is doing well" was untrue in fact and fradulent in law. The testimony discloses that the mill was not "doing well" at the date of the letter and had not done well during any portion of the time that it was in operation. The further statement that, "all the cloth they make is sold at a good fair profit," is of the same character. The defendant undertakes to justify this latter statement by testifying that he expected to sell their goods at a profit. This, if true, would not authorize the statement. But the basis of such expectation was that if the goods could be sold at certain prices, and could be manufactured at a certain cost, there would be a profit. Unfortunately for the company both factors upon which the hope was based, failed to materialize.

Relying on the defendant's false and fraudulent statements the plaintiffs are out of pocket to the amount of their unpaid bills. The defendant, after the final collapse of the company, received

payment in full for $2,300, which he had advanced for the company, from the proceeds of cloth manufactured from the plaintiffs' wool.

The verdict is so manifestly against evidence that it is set aside and a new trial granted.

*Motion sustained.*