Argued July 13, reversed and remanded September 14, rehearing denied December 14, 1920.

# OBERMEIER *v.* MATTISON.

(192 Pac. 283; 193 Pac. 915.)

**Landlord and Tenant—Covenant of Quiet Enjoyment Implied.**

1. In all leases of real property, there is an implied covenant that the lessor will protect the lessee in the quiet enjoyment of the premises for the term of the lease.

**Landlord and Tenant—Covenant of Quiet Enjoyment Protects Lessee from Exclusion from Possession.**

2. An express or implied covenant of quiet enjoyment protects the lessee against exclusion from possession by one having a paramount title or by lessor himself.

**Landlord and Tenant—Lessor Required to Place Lessee in Possession.**

3. A lease of real property and covenant of quiet enjoyment involves the obligation on the part of the lessor to place the lessee in possession at the time fixed for the commencement of the term.

**Pleading—Complaint After Verdict Held to Plead Fraudulent Misrepresentations.**

4. In lessee's action for lessor's failure to put him in possession, in which it was claimed by lessor that lessee in consideration for specified sum had made settlement, allegations that lessee had been induced to make settlement by agreement that it should cover claims only to date of settlement, and by false statements that the premises were unoccupied, *held,* in absence of demurrer and after verdict, to plead fraudulent misrepresentations.

**Landlord and Tenant—Whether Lessee's Settlement for Eviction was Fraudulently Induced Held for Jury.**

5. In lessee's action for lessor's failure to put him in possession, in which it was claimed by lessor that lessee in consideration for specified sum had made settlement, question of whether settlement had been induced by fraudulent misrepresentations *held* for jury.

**Landlord and Tenant—Lessor Liable for Eviction, Though He has Transferred Reversion.**

6. Lessor is liable for damages for failure to put lessee in possession, though he has sold land subject to lease to third party.

**Principal and Agent—Agent not Liable on Lease Made After Disclosure of Agency.**

7. Agent who leases land, disclosing to lessee that he is acting as agent, is not liable to lessee for failure to put lessee in possession.

Measure of damages recoverable by tenant for failure of landlord to deliver possession of premises, see note in Ann. Cas. 1915B, 805.

**Landlord and Tenant—Lessee's Contract With Lessor's Grantee, Stipulating Damages, not Binding on Lessor.**

8. Lessee's contract with lessor's grantee, stipulating damages for termination of lease before expiration of term, was not evidence of damages recoverable against lessor for failure to put lessee in possession.

### ON PETITION FOR REHEARING.

**Landlord and Tenant—"Attorn" Defined.**

9. To "attorn" means to agree to become tenant to one as owner or landlord of an estate previously held of another, or to agree to recognize a new owner of a property or estate and promise payment of rent to him.

**Landlord and Tenant—Agreement Between Lessee and Purchaser from Landlord Held a Novation.**

10. Where a lease was made, and, pending putting the tenant in possession, the land was sold subject to the lease, to which the tenant assented by making a new lease for the land and for $100 released the original landlord, the seller accepting the sum as complete settlement for any delay in obtaining possession, etc., there was a novation eliminating the original landlord and seller, who assented, and by taking title subject to the lease and contracting for its modification the purchaser of the land became bound by the terms of the lease, which tenant accepted by joining in it.

**Landlord and Tenant—Agreement Between Purchaser of Land and Tenant Induced by Fraud No Obstacle to Enforcement of Original Lease by Tenant.**

11. If the making of an agreement between a tenant and the purchaser from the landlord was induced by fraud perpetrated on the tenant, the instrument is void, and constitutes no obstacle to the tenant's enforcing his previous original lease from the landlord or to his recovery from the landlord, subsequent seller of the property, on his implied covenant therein to give possession.

**Landlord and Tenant—Tenant not Entitled to Destroy and also Enforce Fraudulently Procured Agreement of Attornment.**

12. Where land was leased, and sold by the landlord subsequently, and the purchaser by fraud on the tenant induced him to make an agreement of attornment releasing his rights against the landlord, the mere signing of the agreement caused the tenant no damages, and all the tenant can claim as against the purchaser is to be relieved from the contract, not being able to destroy it and enforce it also.

**Reformation of Instruments—Equity Alone can Reform Attornment Agreement to Restrict Release of Original Landlord.**

13. If a tenant would reform his attornment agreement with the purchaser of the land so as to restrict his release of the original landlord to the damages accruing from failure to give possession and enforce it where reformed, he must seek the equity forum.

Fraud—Necessary Averments Stated.

14.   A pleading alleging fraud must state that the representations were false, setting out what the truth was so that the court may draw the conclusion of falsity, that the one making them knew they were false or made them recklessly, that they were made with intent to defraud, and that the party seeking relief relied on the false statements and was thereby deceived.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

This is an action for damages for breach of the covenants contained in a lease of real estate.   The complaint alleges that on November 13, 1917, plaintiff entered into a contract with the defendant John Van Zante for the leasing of a certain tract of farm land in Washington County, of which Van Zante claimed to be the owner and in the possession.   The term of the lease was three years, commencing November 30, 1917, and ending November 30, 1920. The rental for the first year was to be $1,500, and, in accordance with the terms of the lease, it was paid at the time of the execution of the contract.

Some time before the execution of the agreement above mentioned, the defendant Mortgage Company Holland-America had foreclosed a mortgage upon the property, which had been purchased at sheriff's sale by Van Zante, as the agent of the Mortgage Company, and the conveyance was taken in the name of Van Zante, who held it in trust for his principal. The mortgagor had previously leased the land to a man named Rowe, whose tenancy expired on November 1, 1917.   The latter remained in possession after the expiration of his term, and was still in possession when plaintiff's tenancy was due to begin, and, in fact, continued in possession until late in February, 1918.   Some time in the month of November, 1917, and after the execution of plaintiff's lease, and while

the Rowes were still wrongfully holding over, Van Zante conveyed the property, subject to plaintiff's lease, to the defendant Esther Mattison, and on January 11, 1918, plaintiff and defendant Van Zante and Mattison met together, and at such meeting there was executed the following instrument:

"Agreement entered into this 11th day of January, 1918, by and between Esther Mattison, herein-. after called lessor, and Joe Obermeier, hereinafter called the lessee, Witnesseth,

"Whereas, the lessee heretofore on the 13th day of November, 1917, entered into a lease in writing with the predecessor in title to the lessor named herein, John Van Zante; and

"Whereas it is desired to make a modification of said lease between said lessee and the present owner of the property, the lessor named herein;

"Now, therefore, in consideration of the mutual covenants hereinafter contained, it is understood and agreed that the clause in said lease on page 2 thereof, in regard to the option on the part of the lessor to terminate the lease in case of sale, is hereby modified to read as follows:

"It is further understood and agreed between the parties hereto, that in the event of sale of said property, that this lease may be terminated on or about the first day of November, 1918, or 1919, as the case may be. That in the event of the termination of the lease about November 1, 1918, the lessee shall have the right to remove all crops grown upon said property during the growing season of 1917, and in addition thereto, shall receive back from the rental paid at the making of said lease, the sum of $500 of said rental, and in addition thereto the sum of $500 as fixed and liquidated damages for the termination of said lease at that time.

"That in the event that said lease is terminated about November 1st, 1919, under the option hereinabove stated, said lessee shall be entitled to receive the sum of $300 as fixed and liquidated damages for

the termination of said lease at that time, and be entitled to remove the growing crops upon said property grown during the growing season of 1919.

"It is further understood and agreed that as a full and complete settlement of any delay in obtaining possession of said premises, and as full settlement of any controversy that might grow out of said matter between said lessee and John Van Zante, or the lessor named herein, that said lessee accepts the sum of $100 in cash upon the signing of this modification of the lease, the receipt whereof is hereby acknowledged.

"It is further understood and agreed that, in case the lessee constructs a fence between the timber land and the slashing, that any barb wire, posts, rails or other material upon the place can be used for that purpose, without expense to lessee.

"In Witness Whereof, the parties have hereunto set their hands and seals this 11th day of January, 1918, the same being done in duplicate.

"ESTHER MATTISON.   (Seal)<br>
"JOE OBERMEIER.    (Seal)

"Witnesses:
        "E. L. HOLDER.
        "JOHN VAN ZANTE."

Referring to the above agreement, the complaint alleges:

"That the said instrument, attached hereto and marked 'B,' contains a paragraph which reads as follows:

" 'It is further understood and agreed that as a full and complete settlement of any delay in obtaining possession of said premises, and as a full settlement of any controversy that might grow out of said matter between Joe Obermeier, the lessee, and John Van Zante, the lessor, named herein, that said lessee accepts the sum of one hundred ($100) dollars cash upon the signing of this modification of the lease, the receipt whereof is hereby acknowledged.'

"And it is further alleged by the plaintiff herein, that at the time of the execution of the said instru-

ment, that the said clause was interpreted and understood between the plaintiff and the defendants herein, and all of them, and that its meaning was that the receipt of the said one hundred ($100) dollars mentioned therein, was in liquidation of any and all damages up to the date of the execution of the said exhibit 'B' hereto attached and for no other consideration whatsoever, and that the said lands set out in the said leasehold were at that time unoccupied, and that the plaintiff herein could at once enter upon the possession thereof, and that the inducement for the plaintiff to execute the said instrument marked 'B' was the above interpretation of said clause and the statement made by the said defendants to the plaintiff that he could take possession at once of the said premises, and that they were free of the possession of anyone excepting these defendants.

"This plaintiff further alleges that the said statements were false and untrue, and that the said premises at the date of the execution of the said modification to the said contract marked 'B' were not free from the possession of any and all persons excepting these defendants, but that the said premises were at that time occupied by other persons, and that this plaintiff has made several attempts to take possession of the said premises but has not been able to do so on account of the said premises and the buildings thereon being occupied by other persons, and that it is impossible for this plaintiff to take possession of the said premises, and has been at all times since the said 12th day of January, 1918, and that the defendant, Esther Mattison, has begun an action in forcible entry and detainer in the Circuit Court of the State of Oregon, for Washington County, against —— Rowe and —— Rowe, who are in possession of the said premises, and that the said action is now pending in the said court undetermined."

It is further averred that defendants induced plaintiff to delay action in the matter by repeated assurances that they would have the wrongdoers re-

moved from the premises, and by such delay he was prevented from securing other lands, and by reason thereof, and of being deprived of the use of the lands in question he was damaged in the sum of $1,000, and that he had paid Van Zante the sum of $1,500, as rental of the premises, under the lease, which constituted damage in that sum. There were also allegations of special damages in small amounts.

The answer of the Mortgage Company and Van Zante, after some denials, pleads affirmatively the execution of the lease, and the validity thereof, and that it clothed plaintiff with the right to take all necessary legal proceedings to obtain possession of the land. A second affirmative defense is to the effect that Van Zante had sold the land to defendant Esther Mattison, subject to the plaintiff's lease, and that she had also received a conveyance from Johnson, the mortgagor, and then pleads the execution of the agreement of January 11th, referred to in the complaint, as a settlement of all damages which might result from the delay in obtaining possession, a substitution of Esther Mattison as the landlord, and a release of these defendants from further liability or responsibility. A third separate defense is to the effect that prior to the execution of the agreement of January 11th, plaintiff had actually taken possession of the premises, and so continued in possession until some time thereafter, when, becoming dissatisfied with his bargain, he induced the Rowes to refuse to leave the premises, in order that plaintiff might have an excuse for avoiding the contract.

The defendant Mattison answered separately, in substantially the same manner as the other defendants.

Replies having been filed, there was a trial by court and jury, resulting in a verdict and judgment in favor of plaintiff and against the defendants Van Zante and the Mortgage Company, who unite in this appeal.                              REVERSED AND REMANDED.

For appellants there was a brief with oral arguments by *Mr. A. H. Tanner* and *Mr. John Van Zante.*

For respondent Joe Obermeier, there was a brief and an oral argument by *Mr. Cicero M. Idleman.*

For respondent, Esther Mattison, there was a brief submitted by *Mr. Conrad P. Olson* and *Mr. Ralph R. Duniway.*

BENSON, J.—When plaintiff rested, the defendant Mattison moved for a judgment of nonsuit which was granted, and the defendants Van Zante and the Mortgage Company interposed a similar motion, which was denied. These rulings are assigned as error, and, as they involve the greater portion of the questions raised upon the appeal, we shall consider them first. The defendant Mattison's connection with the transactions here involved began when she purchased the legal title to the land involved from Van Zante, and she became further interested in the transactions resulting in this litigation when, with the plaintiff, she executed the instrument of January 11th, which is marked "Plaintiff's Exhibit B," and which will hereafter be referred to as "Exhibit B."

1. The appealing defendants, Van Zante and the Mortgage Company, insist that they were entitled to a judgment of nonsuit, primarily, for the reason that the lease, which was executed by Van Zante and plaintiff, on November 13, 1917, does not impose

upon them the duty of placing the lessee in posses-
sion. In their brief, the defendants very clearly
state their contention thus:

"Where the landlord gives the tenant a right of pos-
session of the demised premises, he has done all that
he is required to do, by the terms of the ordinary lease,
and in the absence of a covenant for possession, the
lessee must assume the burden of enforcing such right
of possession as against all persons wrongfully in pos-
session, whether they be trespassers or former tenants
wrongfully holding over."

Upon the other hand, the plaintiff quite as clearly
states his contention thus:

"If a lease contains no covenant of peaceable pos-
session or entry, one is implied, and it is the duty of
the landlord to put the tenant in possession, and to
defend his possession, against all wrongful aggres-
sions."

It is the settled law of this state, that in all leases
of real property there is an implied covenant that
the lessor will protect the lessee in the quiet enjoy-
ment of the premises for the term of the lease: *Ed-
wards* v. *Perkins,* 7 Or. 149.

2. The authorities are also uniformly to the effect
that an express or implied covenant of quiet enjoy-
ment protects the lessee against exclusion from pos-
session by one having a paramount title or by the
lessor himself: 1 Tiffany on Landlord & Tenant, 542.
But when the lessee is kept out of possession by a
stranger, or a former tenant who is wrongfully hold-
ing over, without the fault of the lessor, there is
direct conflict in the authorities. The two lines of
decisions have been termed by some of the writers,
the "English rule" and the "American rule." The
doctrine of the English decisions, as expressed in the
leading case, is "that he who lets, agrees to give pos-

session, and not merely to give a chance of a lawsuit; and the breach assigned, being, that the defendant did not give the plaintiff possession," it was held that an action would lie by the lessee against the lessor: *Coe* v. *Clay,* 5 Bing. 440.

The leading case supporting the so-called American rule is that of *Gardner* v. *Keteltas,* 3 Hill (N. Y.), 330 (38 Am. Dec. 637), and formulates the rule thus:

"All that either of the covenants mentioned exact of the lessor is, that he shall have such a title to the premises, at the time, as shall enable him to give a free, unincumbered lease for the term demised. There is no warranty, express or implied, against the acts of strangers; hence, if the lessee be ousted by one who has no title, the law leaves him to his remedy against the wrongdoer, and will not judge that the lessor covenanted against the wrongful acts of strangers, unless the covenant be full and express to the purpose."

This doctrine has been followed in *Underwood* v. *Birchard,* 47 Vt. 305; *Pendergast* v. *Young,* 21 N. H. 234; *Field* v. *Herrick,* 101 Ill. 110; *Sigmund* v. *Howard Bank,* 29 Md. 324; *Cozens* v. *Stevenson,* 5 Serg. & R. (Pa.) 421; *Playter* v. *Cunningham,* 21 Cal. 229.

The doctrine announced in the English decisions has been adopted in an equal number of states, beginning with *King* v. *Reynolds,* 67 Ala. 229 (42 Am. Rep. 107), and followed in *Hertzberg* v. *Beisenbach,* 64 Tex. 262; *Hughes* v. *Hood,* 50 Mo. 350; *Hammond* v. *Jones,* 41 Ind. App. 32 (83 N. E. 257); *Sloan* v. *Hart,* 150 N. C. 269 (63 S. E. 1037, 134 Am. St. Rep. 911, 21 L. R. A. (N. S.) 239); *Rose* v. *Wynn,* 42 Ark. 257; *Herpolsheimer* v. *Christopher,* 76 Neb. 352 (107 N. W. 382, 111 N. W. 359, 9 L. R. A. (N. S.) 1127, 14 Ann. Cas. 399).

The question is one which is now presented for the first time in this court. The arguments presented in favor of the doctrine announced in the English decisions impress us as being more in accord with reason and practical justice. In *King* v. *Reynolds,* 67 Ala. 229 (42 Am. Rep. 107), the argument proceeds thus:

"A lease for a year, or term of years, is not a freehold. It is a chattel interest. The prime motive of the contract is, that the lessee shall have possession; as much so as if a chattel were the subject of the purchase. Delivery is one of the elements of every executed contract. When a chattel is sold, the thing itself is delivered. When realty is the subject, still there must be livery of seisin. Formerly, parties went upon the land, and there symbolical delivery was perfected. Now, the delivery of the deed takes the place of this symbolical delivery. Still, it implies that the purchaser shall have possession, and, without it, it would seem the covenant for quiet enjoyment is broken. Up to the time the lessee is entitled to possession under the lease, the lessor is the owner of the larger estate, out of which the leasehold is carved, and ownership draws to it the possession, unless some one else is in actual possession. The moment the lessor's right of possession ceases by virtue of the lease, that moment the lessee's right of possession begins. There is no appreciable interval between them, and hence, there can be no interregnum, or neutral ground between the two attaching rights of possession, for a trespasser to step in and occupy. If there be actual, tortious occupancy, when the transition moment comes, then it is a trespass or wrong done to the lessor's possession. If the trespass or intrusion have its beginning after this, then it is a trespass or wrong done to the lessee's possession; for the right and title to the property being then in the lessee for a term, it draws to it the possession, unless there is another in the actual possession."

3. It might well be added that it is unthinkable that a man should enter into a contract as the lessee of real property, if it could be anticipated, or within the remote probabilities, that a lawsuit would be required to enable him to enter upon the enjoyment of his term. We therefore adopt the doctrine that a lease of real property, and the covenant of quiet enjoyment, involves the obligation upon the part of the lessor to place the lessee in possession of the premises at the time fixed for the commencement of the term.

There has been some argument presented in opposition to this conclusion, based upon the theory that since, from the commencement of the term, the lessee is the only one entitled to the possession, he is the only one qualified to initiate proceedings to oust the wrongdoer. As regards this state, the answer to this contention is, that our statute upon proceedings in forcible entry and detainer is made expressly applicable to such a case, and this court has held that the landlord, after such leasing, still has such a right of possession as will enable him to maintain the action: *Twiss* v. *Boehmer,* 39 Or. 359 (65 Pac. 18).

4, 5. Another element is introduced into the problem by the fact that the defendant Mattison purchased the property, taking conveyances from Van Zante and from Johnson, the mortgagor, a change of ownership of which the plaintiff had notice, prior to the transactions of January 11th. The complaint and both of the answers plead the substance of the agreement of that date, but differ as to its interpretation and effect. The complaint, however, alleges that the sole consideration and inducement for the execution of Exhibit "B" consisted of an agreed interpretation that the payment of $100, at that

time, was in liquidation of damages up to that date, and the statement of the defendants that the premises were then unoccupied, and subject to immediate, unobstructed entry by plaintiff. And it is further averred that the statements so made by defendants were false and untrue, and that the property was then occupied by others, and that it has, at all times since, been impossible for plaintiff to obtain possession of the land. These averments are not free from criticism, but we think that in the absence of demurrer, and after verdict, they may be regarded as a plea of fraudulent misrepresentation, whereby plaintiff was induced to execute the contract. The question of misrepresentation was one of fact, to be determined by the jury under proper instructions by the court. If, as a matter of fact, the execution of the instrument was free from the taint of fraud, then, as a matter of law, the agreement consists of a new contract of leasing, with an express attornment to a new landlord, and a final settlement of all claims against the original lessor; a condition which would thrust responsibility for further delay in obtaining possession of the land upon the defendant Mattison. The judgment of nonsuit in favor of the defendant Mattison prevented the proper submission of these questions to the jury, and was therefore erroneous.

6. If, upon the other hand, the jury should determine that the settlement recited in Exhibit ''B'' was obtained through misrepresentations, and was therefore void, the question is at once presented as to the liability of the original lessor, after a transfer of the reversion. This question is answered quite definitely in 1 Tiffany on Landlord & Tenant, 880, in the following quotation:

"Though a lessor transferring his reversionary interest loses, it seems, any right of action for subsequent breaches of the lessee's covenants, he still remains liable on his own covenants, since one cannot, by his own act, without the consent of the other party, relieve himself from a contractual liability, the same principle being applicable here as in the case of an assignment of the leasehold, by which the original lessee is not relieved from liability on his covenants."

This conclusion is announced also in the following cases: *Carpenter* v. *Pocasset Mfg. Co.,* 180 Mass. 130 (61 N. E. 816); *Jones* v. *Parker,* 163 Mass. 564 (40 N. E. 1044, 47 Am. Rep. 458); *Glidden* v. *Second Ave. Inv. Co.,* 125 Minn. 471 (L. R. A. 1915C, 190). It follows that as to the other defendants the judgment of nonsuit was properly denied.

7. Appellants urge that error was committed in refusing to give to the jury, the following requested instruction:

"The jury is instructed that it is admitted in the pleadings in this case and shown by the evidence that the defendant, John Van Zante, was acting in the matters involved in this case, as agent and trustee for the defendant Mortgage Company Holland-America, and if you find that he disclosed to the plaintiff the fact that he was acting in said transaction as such agent for said Mortgage Company Holland-America, and made said lease as such agent, then your verdict should be for defendant John Van Zante, even though you find against the other defendant, Mortgage Company Holland-America."

This instruction is undoubtedly a correct statement of the law, as declared by this court in *Frank* v. *Woodcock,* 72 Or. 446 (143 Pac. 1105). If there was any evidence in the record tending to prove a disclosure of the relation of principal and agent, it was

clearly error to refuse the instruction. However, our attention is not called to any such evidence, and we have not been able to find any. It is true that the complaint and answers allege such a relation, but it is not alleged that there was any disclosure thereof prior to the commencement of this action.

The complaint alleges general damages in the sum of $1,000 for the breach of the covenant heretofore discussed, and upon that subject the court gave the following instruction:

"If you should find from all the evidence and in accordance with the instructions already given you, that the defendants Van Zante and the Mortgage Company had broken the terms, covenants, and conditions of the lease, then the plaintiff herein would be entitled to recover whatever other damages he may have suffered by reason of the breach thereof, not to exceed the sum of one thousand dollars."

Defendants urge that this constituted error, for the reason that no evidence was offered upon the question of such damages. The plaintiff answers this assignment by calling our attention to the following paragraph of Exhibit "B."

"It is further understood and agreed between the parties hereto that in the event of sale of said property, that this lease may be terminated on or about the first day of November, 1918, or 1919, as the case may be. That in the event of the termination of the lease about November 1, 1918, the lessee shall have the right to remove all crops grown upon said property during the growing season of 1917, and in addition thereto, shall receive back from the rental paid at the making of said lease, the sum of $500 of said rental, and in addition thereto the sum of $500 as fixed and liquidated damages for the termination of said lease at that time."

8. It is argued that this clause of the agreement stipulates a fixed sum as liquidated damages, and, as the contract was introduced in evidence, no further evidence of damages is necessary. It is not necessary for us to consider whether or not this clause fixes the damages for any breach of the covenant, since the contract itself discloses that Van Zante and the Mortgage Company are not parties thereto, was entered into after they had parted with their interest in the reversion, and provides for a contingency with which they could have no concern, and the instruction was therefore erroneous.

There are a number of additional assignments of error, but we think that the discussion already had renders further consideration unnecessary. The judgment is reversed and the cause remanded for a new trial.    REVERSED AND REMANDED.

McBRIDE, C. J., and HARRIS and BURNETT, JJ., concur.

---

Denied December 14, 1920.

PETITION FOR REHEARING.

(193 Pac. 915.)

On petition for rehearing. DENIED.

*Mr. C. M. Idleman* for the respondent Obermeier.

*Mr. Conrad P. Olson* and *Mr. R. R. Duniway* for respondent Mattison.

*Mr. A. H. Tanner* and *Mr. John Van Zante* for appellants.

BURNETT, J.—9. The petition for rehearing is substantially a criticism of the terminology employed by Mr. Justice BENSON to characterize the new relation assumed by the plaintiff in the contract he made with the defendant Mattison as described in the complaint. The substance of the petition is that in saying the plaintiff had "attorned" to Mattison we had assumed the full consummation of the relation of landlord and tenant between Obermeier and Mattison, overlooking the requirement that the tenant for years must be established in the possession of the land, failing in which the tenancy is not accomplished. In other words, there is no landlord and no tenant until the latter takes possession, and hence no attornment is possible. This may be granted, if we are to be governed by extreme strictness in language. One definition of "attorn" according to Webster is "to agree to become tenant to one as owner or landlord of an estate previously held of another." The Standard Dictionary says "attorn" means "to agree to recognize a new owner of a property or estate and promise payment of rent to him." In this sense, that is exactly what Obermeier did, as portrayed in the contracts he pleads.

Contracting with Van Zante, the plaintiff had entered into what his pleading terms a lease, executory, indeed, because the implied covenant for quiet enjoyment was yet not fulfilled. At this stage he agreed to become the tenant of Mattison concerning the same estate about which he had contracted with Van Zante, which latter agreement was not yet fully executed for like reason as before.

10. As delineated in the complaint, the substance of the matter is that a lease had been made between Obermeier and Van Zante. The only remaining liability resting on the latter was to install the former

in possession. Pending this,, Mattison bought the land subject to the lease already made. To this Obermeier assented by making a new lease with Mattison for the same land. He did more. For $100, the receipt of which was acknowledged, he released Van Zante. He accepted that sum "as a full and complete settlement of any delay in obtaining possession of said premises and as a full settlement of any controversy that might grow out of said matter between said lessee and John Van Zante." It would seem that this amounts to a novation. By taking title to the land subject to the lease and contracting for the modification of that lease, Mattison became bound by the resultant agreement, which also Obermeier accepted by joining therein. The release of Van Zante by payment of $100 exonerated him and leaves Obermeier and Mattison as the only parties concerned about anything occurring after the new lease was formulated. From his participation in the negotiations resulting in the convention between Obermeier and Mattison, from his payment of the $100, and from the fact that the release was for his benefit, all as appears from the complaint, we must assume that Van Zante also agreed. to the new relationship thus established. The result is a novation eliminating him and thenceforward involving only Obermeier and Mattison.

Of course, this result depends upon the actual validity of the contract made and signed by Obermeier and Mattison, known as Exhibit "B," attached to and made a part of the complaint. Obermeier assays to attack this on the ground of fraud. Reluctantly, as being good after verdict and in the absence of demurrer, Mr. Justice BENSON tolerated the averments of the complaint aiming to charge fraud. As there must be a new trial, it becomes

proper to discuss that feature of the complaint; for, if the litigation is to be renewed in the Circuit Court, questions will arise about the sufficiency of the pleading.

11–13. If the making of Exhibit "B" was induced by fraud perpetrated upon Obermeier, the instrument is void and constitutes no obstacle to the enforcement of the previous lease or recovery from Van Zante on his implied covenant therein. If void, Obermeier cannot recover anything from Mattison for its breach, for his relation to the land could not be affected by it. The mere signing of the instrument caused him no damage. The most he can claim as against Mattison is to be relieved from the fraudulent contract. He cannot destroy it and enforce it, too. If he would reform it so as to restrict the release of Van Zante to the damages accruing previously and enforce it as reformed, he must seek the equity forum. Such a result cannot be worked out on the law side. Van Zante and Mattison are not jointly liable, for they did not contract jointly in leasing the property. Aside from questions arising out of his agency for the mortgage company, the former is liable for all the damages accruing, unless he is excused by the release in Exhibit "B." Mattison cannot be liable except by virtue of Exhibit "B," for that is all she ever agreed to with Obermeier.

14. In pleading fraud in a case of this sort it is necessary to state that the representations were false, setting out what the truth was in order that the court may draw the conclusion of falsity; that the one making them knew they were false or made them recklessly; that they were made with intent to defraud; and that the party seeking relief from the fraud relied upon the false statements and was thereby deceived. The precedents for this doctrine

were collated anew by Mr. Justice MOORE in *Lindstrom* v. *National Life Ins. Co.*, 84 Or. 588 (165 Pac. 675).

If Obermeier knew the premises were in possession of another, he was not deceived by and did not rely upon the alleged representations of the defendants that the land was unoccupied. The language releasing Van Zante is plain. There are no ambiguities in it to explain, and unless fraud is properly alleged and proved, the release must stand as stated in this action at law. We cannot add new terms to it or undertake to enforce it in the would-be-amended form.

The costs and disbursements both in this court and in the Circuit Court will abide the event of this action.

The petition for rehearing is denied.

REVERSED AND REMANDED. REHEARING DENIED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.