**Henry LARSON, Plaintiff, v. A. W. HUGILL, Defendant.**

No. A-8557.

District Court, Alaska. Third Division. Anchorage.

Dec. 31, 1954.

350

Bailey E. Bell, of Bell & Sanders, Anchorage, Alaska, for plaintiff.

Arthur D. Talbot, Anchorage, Alaska, for defendant.

HODGE, District Judge.

Plaintiff claims rent due from the defendant in the sum of $3,200 for monthly rentals for August through December,

1952, and January and February, 1953, under the terms of a lease in writing made between the Seward Lumber Corporation and defendant, covering certain lumber manufacturing and logging equipment owned by the lessor, situate near Seward, Alaska. The lease, dated June 10, 1952, was for a term commencing said date and ending December 31, 1953, at the monthly rental of $800 per month for June to October, incl., 1952, and May to October, incl., 1953; and $200 per month for the months of November and December, 1952, and January, February, March, April, November and December of 1953. The amount claimed is for the period of actual occupancy contended by plaintiff. Such lease provided that all rentals thereunder shall be paid by the lessee to attorneys Bell & Sanders for the benefit of the plaintiff, and credited on account of the claim of the plaintiff against the Seward Lumber Corporation, then pending in this court, in which plaintiff was seeking to recover damages for substantial injuries received by him while an employee of the corporation, such credit to apply on the amount which may be found to be owing from the lessor to plaintiff in such suit. The lease further provided that so long as the monthly payments agreed to be made as rental are paid to him, an attachment of the lessor's property in such action "shall be considered relaxed to the extent of this lease and a separate contract this day entered into between the Seward Lumber Corporation and Henry Larson by his attorney". The lease contained the usual covenant of quiet enjoyment of the leased premises and property.

██ Defendant by his answer denied any default, but in the answer and at the trial conceded payment of only $1,600 on account of such rentals, being for the first two months. By way of affirmative defense defendant alleged that he was induced to enter into the lease by fraudulent misrepresentations of the lessor, acting through its duly authorized Vice President, N. L. Steward, during the negotiations had between the parties prior to signing the lease, to the effect that all outstanding obligations of the Seward

Lumber Corporation had been paid except for the personal injury claim of the plaintiff, and that the defendant would enjoy the quiet and peaceable possession of the leased premises, whereas in fact the Seward Lumber Corporation had numerous outstanding debts which defendant was obliged to pay in order to obtain necessary supplies and equipment for the conduct of the business and in order to prevent the attachment, repossession and levy by creditors of the corporation of equipment leased to him; also, that as a result of such, he was obliged to and did pay to such creditors the sum of $7,442.41, which he seeks to set off against any claim by plaintiff for such rents accrued; further, that additional demands were made upon him by other creditors of the corporation which had a "legal right and present intention" to seize, attach or levy upon the premises leased; and that by reason of the above, defendant, on September 1, 1952, rescinded and terminated the lease. As a second affirmative defense, defendant claimed a breach of the covenant of quiet enjoyment in that the corporation "permitted" its creditors to harass him by asserting such claims and attachments. By way of counterclaim, defendant seeks to recover from the plaintiff the sum of $1,600 paid on account of such rent.

The setoff and counterclaim were dismissed by the court during the progress of the trial upon motion of the plaintiff. The sole question remaining for determination is whether or not the defendant is entitled to relief against the claim for rentals unpaid upon his affirmative defense; or whether he is justified in rescinding the lease by reason of the fraud and breach of covenant alleged.

Plaintiff contended throughout the trial, and maintains in his brief, that no such defense is available against the plaintiff as a creditor beneficiary under the lease, under the rule stated in 17 C.J.S., Contracts, § 390, p. 883, and cases cited in support thereof, to the effect that after a contract for the benefit of a third person has been accepted or acted on by him, it cannot be rescinded by the parties without his consent. An examination of these authorities reveals that

such rule is applicable only, as indicated in the text cited, to rescission between the original parties to the contract, or modification or reformation of such instrument by the parties, or withdrawal by the promisor from his contract with consent of the promisee; all without consent of the beneficiary. The correct rule in cases of this character appears definitely to be that a creditor beneficiary is subject to all defenses that are available against the promisee, with certain exceptions not applicable here; and that when sued by the beneficiary the promisor may rely on equitable defenses such as fraud or breach of covenant, or other facts showing that the promisee could not enforce the contract. 2 Williston on Contracts, Sec. 394, p. 1136; Restatement of the Law of Contracts, Sec. 476, pp. 908, 910; Sec. 140, p. 165; Corbin on Contracts, Vol. 4, Sec. 818, p. 266; 12 Am.Jur. Sec. 289, p. 842; Annotation 81 A.L.R. 1292.

Plaintiff further contends that this rule is not applicable where the beneficiary has changed his position in consideration of the execution of the lease and promise to pay the rentals; and that he had so changed his position by relaxing the attachment mentioned. This limitation is mentioned in the text cited above in 12 Am.Jur. Sec. 289, p. 842; but the majority rule appears to be that such limitation applies to restitution, or in this case to the counterclaim and setoff; and also as to matters arising after the contract is made, or the running of the statute of limitations on the original debt, rather than as to facts affecting the contract in its formation. Restatement of the Law of Restitution, Sec. 17, p. 76; Corbin on Contracts, above, p. 273; Lawrence Nat. Bank v. Rice, 10 Cir., 82 F.2d 28.

Plaintiff also relies upon the case of Mitchell's Adm'x v. Stewart, 296 Ky. 538, 177 S.W.2d 872. This case appears to be close in point, except that here the Court found that the defense was claimed "under an entirely independent and unrelated transaction", not affecting the relations between the parties to the suit; and the above principles were not discussed in this opinion.

I am of the opinion, as stated during the trial, that the defenses claimed are available to defendant if proven. There remains for discussion the ultimate question of whether such defenses were sustained by the evidence and the law applicable thereto. The evidence of the defendant as to the alleged fraudulent misrepresentations was only to the effect that Mr. Steward, Vice President and mill manager of the lessor corporation, represented to him during negotiations for the lease that the corporation owed no debts except the Larson damage claim; that he also discussed the matter with a Mr. Hubbard, accountant for the company, who informed him that there were no other obligations, but he was "evasive" and made no direct statements. Defendant also testified that, by reason of such representations, the following debts of the corporation were paid or discharged by him during the course of his operation under the lease:

(1) Some $2,200 plus fees and costs, paid to Edwards-Nesmith Ryder, Inc. for balance claimed on a conditional sales contract covering a TD 18 International Tractor Dozer, included in the leased equipment; (2) About $465 "invested" to purchase of the same company a "Krane-car", not covered by contract; (3) A debt assumed owing by the corporation to one Riley for purchase of an "arch", or logging yoke, as to which defendant's bill for lumber in the amount of $1,432 was offset against the debt claimed by Riley of $1,800, and the balance agreed to be paid in cash; (4) Bill for lumber sold Hoyt Motor Company in the sum of $470, offset against claim for account owing by the company for a light plant, of $300; (5) Claims of the Standard Oil Company, $385, and the Kenai Co-Op, $400; (6) Some $450,—$250 in cash and $200 in credit, paid Carl Lyng for motor and drums on leased premises; (7) Claim of Joe Woods, $149, offset against bill for lumber sold Woods, which he refused to pay.

Other debts asserted but not paid included claims for labor and a grocery bill of $1,800. Upon being informed of the labor claims defendant testified that he found it "impossible to go along", and notified Mr. Albertson of the corporation, and Mr. Steward, that he was rescinding the lease. He did not so inform the beneficiary,—the plaintiff. He ceased operations of the mill about September 1st, but continued logging until November.

Fraud must be affirmatively proved by the one who relies on it, either for purpose of proof of claim or by way of affirmative defense. To make out a case of fraud the party must prove every element necessary to constitute such, including knowledge of falsity or reckless disregard for truth, intent to deceive, reliance upon such representations, the materiality thereof and damage resulting therefrom, which must concur with the fraud. One seeking to nullify a written instrument for fraud must adduce clear, unequivocal and convincing evidence and not a mere preponderance of evidence. 37 C.J.S., Fraud, § 94, p. 393 et seq.; 23 Am.Jur. Sec. 20, p. 772 et seq.; Lalone v. United States, 164 U.S. 255, 17 S.Ct. 74, 41 L.Ed. 425; McDonnell v. General News Bureau, 3 Cir., 93 F.2d 898.

The proof in this case does not meet these standards either as to the representations made or as to resulting damage. Mr. Steward, who was retained by the defendant as mill foreman, was not called as a witness but his deposition had been taken, in which no corroboration of defendant's testimony as to such representations appears, and from which neither intent to deceive nor reliance upon any statements regarding the debts of the corporation may be implied. And the materiality of such representations as affecting defendant's right to peaceful possession and use of the demised property is very much to be doubted. The case of Henry v. Dennis, 93 Me. 106, 44 A. 369, relied upon by defendant in his brief, relates to false representations made in obtaining credit, which would appear much more materi-

al than in the case at bar; and is not in point on the question of sufficiency of evidence of fraud to set aside a written instrument.

In the matter of concurring damage, it was not shown that defendant was obliged to pay any of these creditors' claims. The Edwards-Nesmith Ryder corporation had then no lien upon the tractor or right of repossession, as will be further discussed later; it was shown that this tractor was little used until Hugill put new tracks on it, although he testified that it was "essential to the operation". He received bills of sale in his own name covering the tractor, the Krane-car and light plant, and claimed such as exempt from the attachment; and paid the balance of the Riley debt "in exchange for a bill of sale", although Riley testified that he had not agreed to such. This account was to be taken care of in exchange for lumber but Hugill was not bound by such agreement. He testified that the claims of Standard Oil Company and the Kenai Co-Op were paid "in order to secure supplies", or to "obtain credit", but he was under no legal duty to pay such. The claims of the other creditors obviously could not have been offset against Hugill's lumber bills; he explained that he agreed to such to avoid litigation, but such cannot be a valid excuse for allowing the offsets and claiming rescission. Nor was he in anywise liable for the labor claims, whose lien rights had long since expired. No relief upon the grounds of fraud may therefore be had.

 On the question of breach of the covenant of quiet enjoyment, the only evidence worthy of consideration related to the conditional sales contract covering the tractor, for no other claim of paramount title or disturbance by any lienholder or encumbrancer was shown.

> "While it has been laid down that the covenant for quiet enjoyment goes to the possession and not to the title, such covenant is an assurance against the consequences of a defective title and of

any disturbance thereupon, and, broadly and generally speaking, it extends to all lawful outstanding claims on the premises conveyed, *subject to the general rule that it applies only to the acts of those claiming under paramount and lawful title existing at the time the covenant was made.*

"*The covenant has been regarded as an agreement that the grantor will not trouble, molest, evict, nor disturb the grantee, and also as a covenant against disturbance by any encumbrancer.*" 21 C.J.S., Covenants, § 45, p. 916. (Italics added.)

As to the tractor, defendant testified that he paid such on the representation of a "representative" of the seller, confirmed by Steward, that the tractor would have to be paid for before it could be used. It was shown that the contract was not filed for record with the Commissioner and Recorder for Seward Precinct. Therefore any condition reserving title in the seller was void as to the attaching creditor. Sec. 29-2-5, A.C.L.A. From the date of the attachment until it be discharged the attaching creditor as against third persons is deemed a purchaser in good faith and for a valuable consideration of the property attached. Sec. 55-6-67, A.C.L.A. Defendant testified that he had believed a "replevin suit" had been instituted by the vendor; but the record showed that on August 21, 1951 the vendor had filed suit in this court against the Seward Lumber Company, claiming $3,500 "as balance due under written contract for purchase" of this tractor, by which the vendor elected to waive its security and sue upon the debt.

It is true that no ouster or actual eviction need be proven, and that upon constructive eviction of a tenant of a portion of the premises by the holder of paramount title, liability is suspended in part, and the rent apportioned if such occurs subsequent to the lease. But it is necessary that title should accrue which is superior to that of the lessor, and that plaintiff's possession be disturbed thereby. 32 Am.Jur. 397,

Sec. 487; pp. 264–265, Sec. 284; Kane v. Mink, 64 Iowa 84, 19 N.W. 852. To constitute constructive eviction the tenant must be deprived of the beneficial enjoyment of the premises by assertion of a paramount title, or that there be a material and permanent interference with the beneficial use. Halbert v. Jones, 93 Cal.App.2d 783, 209 P.2d 812; Silberstein v. Laibovitz, Tex.Civ.App., 200 S.W.2d 647. If a tenant yields to an asserted paramount title before judicial determination he does so at his own peril. 32 Am.Jur. 396, Sec. 485. There being a total failure of proof of any paramount title or actual disturbance, no relief from the defendant's liability under the lease may be had upon these grounds.

 Defendant also contends that there was an attornment, under the decision of Obermeier v. Mattison, 98 Or. 195, 193 P. 915. The facts here do not constitute such an attornment under the definition of such term contained in this opinion. Nor did the plaintiff stand in the relation of an assignee, as claimed by defendant.

 Defendant also seeks to attack the attachment issued, claiming that the U. S. Marshal did not take the property into his custody, as required by Sec. 55–6–66, subd. 2, A.C.L.A. The record shows that the property attached included heavy machinery which was not capable of manual delivery, and that the Deputy Marshal made such attachment by delivering to and leaving with a representative of the company having possession of it a certified copy of the writ, and appointing him custodian, he issuing a receipt therefor; which fully complies with the provisions of the 3rd subsection of the statute. The presumption is that the writ is valid, in the absence of any showing that the Marshal failed to do his duty. Griffin v. American Gold Mining Co., 9 Cir., 136 F. 69, 2 Alaska Fed. 351. Moreover, such attachment was expressly affirmed by Judge Anthony J. Dimond in rendering judgment upon plaintiff's suit against the Seward Lumber Corporation on January 16, 1953, which is res adjudicata on this point.

■■■■■■■

Proof of plaintiff's claim having been adequately made, and no defense appearing thereto which may be legally sustained, plaintiff is entitled to recover judgment against defendant in accordance with the prayer of his complaint, with attorney's fees allowed pursuant to Rule 45. Judgment may be entered accordingly.

## Re-Execution

■■■■ An order had been entered in this case on March 9, 1954 vacating a previous judgment entered by default and setting aside a Marshal's sale of property belonging to the defendant attached in this case. Such order provided that the property of the defendant, purchased by the plaintiff at such sale, be returned to defendant upon the filing herein by defendant of an approved bond with sufficient sureties in the sum of $5,000, which bond was accordingly filed. Defendant claims that some of this property was not returned to him and that some of the attached equipment, being a logging truck and a donkey engine with trailer, were sold by Larson on June 3, 1954, to one Mike Stevens. Evidence concerning this issue was excluded at the trial upon order that such would be taken up upon supplemental proceedings or other proper procedure. Defendant has now applied to the Court for an order citing the plaintiff and his attorney for contempt for disobedience of the order mentioned, and evidence has been submitted of an effort made by counsel for plaintiff to recover such property.

Rather than issue such contempt order at this time, it will be further ordered that plaintiff be required to account to defendant for all of such property not returned, or the value thereof; and that failing to so account, defendant is entitled to an offset against the judgment above ordered for the value of such property, to be credited in partial satisfaction thereof, such value, if not agreed upon, to be determined in subsequent proceedings herein. Execution may issue as to the remainder upon the redelivery bond.