## Mitchell's Adm'x v. Stewart.

Feb. 4, 1944.

Cleon K. Calvert and W. L. Hammond for appellant.

E. B. Wilson and James M. Gilbert for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On and prior to March, 1939, the appellee, and defendant below, D. D. Stewart, resided at Flat Lick, Knox County, Kentucky, and was engaged in a number of enterprises, chief among which was the dealing and handling of coal after it was extracted from the mine, and incidental thereto he operated some mines in the coal producing districts of Eastern Kentucky. One mine located in Bell County, with which he appears to have had dealings, was the Magnolia Coal Company, an Alabama corporation. The latter company owned coal producing rights in Bell County from which it had theretofore been extracting coal, and at the time stated it was indebted to Stewart in an amount, not shown in the record, but described as "a considerable amount." The president of the Magnolia Coal Company was C. B. Teasley and he, his wife and a sister-in-law (Mrs. Caroline H. Mourning) all residents of Montgomery, Alabama, owned its entire stock.

Besides being indebted to Stewart the Alabama corporation was also indebted to others and when defendant, Stewart, began pressing Teasley for the collection of his debts the Magnolia Coal Company, through its president, filed in a Federal District Court in Alabama a voluntary petition in bankruptcy. At a hearing set by the referee in Montgomery, Alabama, Stewart and his attorney, as well as Teasley and his attorney, representing the company, were present and began the taking of testimony relating to the claims of Stewart. When noon arrived the postponement of the hearing until the next day was made at the request of Stewart, for the purpose of procuring a compromise of the litigation. On that afternoon conferences were had between Teasley and Stewart in a hotel in Montgomery, the attorneys for each side being present, at least a part of the time.

Finally an agreement was reached, on condition that two of the creditors of the coal company (who were employees in its office at Montgomery) should be satisfied by Stewart upon terms acceptable to them. Those creditors were W. A. Mitchell to whom the coal company owed $750, and J. C. Curry to whom it owed $500. The oral agreement between Teasley—who had authority from his associate stockholders in the coal company—and Stewart, as later incorporated in a writing prepared the next morning, was, in substance, that Stewart agreed to purchase all of the stock of the Magnolia Coal Company, to pay a list of its enumerated debts, to take over and operate some coal leases owned by Mrs. Teasley adjoining an operated mine by Stewart in Bell County, and to pay her a royalty for all coal "loaded over Hanby tipple," whether produced from such leases or not. Other obligations were assumed by Stewart, and Teasley agreed to take care of certain obligations which had been executed by him and which he stated were not debts of the coal company but were his individual transactions and which amounted to $8,200, all of which Teasley settled and delivered to Stewart or his attorney the evidences thereof.

Teasley declined during the negotiations to participate in any manner in the arrangement by which the claims of Mitchell and Curry were to be arranged, upon the ground that he did not represent them in any manner. However, Curry, who was present in Montgomery and also on the occasion of the negotiations at least some of the time before it was finally concluded, was approached and he agreed to confer with Mitchell who was then in Pineville, Kentucky, and later report to Stewart the results thereof which he did later in the day. In his report he proposed to accept $500 in satisfaction of his claim, and that he was authorized by Mitchell to accept $1,000 in satisfaction of his claim, or $750 with the promise of a job thereafter for Mitchell. Stewart then and there agreed to pay to each of those claimants the amounts agreed upon, but no mention of that parol agreement was made in the later written draft of the agreement between Teasley and Stewart with reference to the purchase of the stock in the Magnolia Coal Company. However, Stewart admits in this case that he did agree to assume and pay as soon as he returned to his home the two claims of Mitchell and Curry

as above stated, although he never thereafter gave to Mitchell the job by which his claim was reduced from $1,000 to $750. After the agreement with Teasley to purchase the stock of the Magnolia Coal Company was completed, the bankruptcy case was dismissed.

This action was filed in the Bell Circuit Court by Mitchell against Stewart to recover the $750 based on the promise made by the latter when he purchased the stock of the Magnolia Coal Company from Teasley. Defendant answered admitting the parol agreement to pay to Mitchell the amount sued for, and he sought in his answer to set off the entire amount of Mitchell's claim on the ground that Teasley had concealed from him some of the indebtedness of the Magnolia Coal Company at the time he contracted to purchase its stock, chiefly consisting of a $6,000 note that the company owed to Mrs. Mourning, Teasley's sister-in-law. However, Mrs. Mourning's note was later settled by Mrs. Teasley transferring to her sister (to whom that debt was owing) her royalty rights that Stewart had agreed to pay Mrs. Teasley in the contract of purchase of the stock of the coal company, and the Alabama action filed by Mrs. Mourning after the purchase of the stock was dismissed settled. Therefore, Stewart never paid nor never became obligated to pay any part of that indebtedness, although it was mentioned in the writing evidencing his purchase.

In pleading his set-off defendant alleged that Teasley misrepresented the facts to him whereby he was induced to purchase the stock and to incur the obligations on his part set out in that agreement, and that he was compelled thereafter to pay claims against the coal company, exceeding $750 sought to be recovered in this action by Mitchell, and that Teasley at the time was acting for and on behalf of plaintiff in the stock sale transaction. He therefore prayed that his set-off and counterclaim be allowed to the extent of plaintiff's debt and that the petition be dismissed, but he did not make his pleading a cross-petition against the Magnolia Coal Company or Teasley to recover for his excess payments. Following pleadings made the issue and upon trial under instructions of the court, the jury found for the defendant, Stewart, upon which judgment was rendered dismissing plaintiff's petition, to reverse which this appeal is prosecuted by the administrator of Mitchell

whose motion for a new trial was overruled, plaintiff having died pending the action, followed by a revivor.

Many of the points discussed in brief for appellee—as well as much of the testimony introduced at the trial relating to the alleged concealments and misrepresentations of Teasley and upon which the affirmative part of the answer is based—we conclude to be wholly immaterial and irrelevant, even if defendant's allegations were established by the proof, but which to say the least of it, is doubtful, and which an analysis of the proof demonstrates, as we conclude. The reason for that conclusion is, that the agreement by Stewart to assume and pay the labor claims of Mitchell and Curry was an entirely independent and unrelated transaction affecting only them and Stewart, entered into because of a demand on the part of Teasley and that he would enter into no kind of a transaction with Stewart unless the claims of Mitchell and Curry were taken care of by Stewart, on terms satisfactory to them. In making the agreement with them Stewart was but paving the way for and removing an obstruction to completing his negotiations with Teasley whereby he might settle or compromise the matters between them by purchasing all of the stock of the company from Teasley. If, therefore, the testimony had shown that Teasley defrauded Stewart to his loss and detriment in the transaction of the purchase of the stock of the company then defendant's remedy would be against that company and not against one having no interest in it except as a creditor and whose claim Stewart agreed to pay and satisfy in order that he might induce Teasley to enter into the stock sale transaction.

If defendant has sustained loss as a result of any fraud or misrepresentation of Teasley, neither Mitchell nor Curry could be held liable therefor, since neither of them owned any interest in the property attempted to be sold to defendant, nor were either of them represented by Teasley who had no authority whatever to act for either of them in the settlement of their labor claims. If defendant, and appellee, was fraudulently induced by Teasley to purchase the stock of the company his remedy would be to recover his losses from the owners of the purchased stock, who were Teasley and his associates whom he represented and for whom he was acting. He certainly would have no right in the cir-

cumstances to defeat the claims of Mitchell or Curry who were innocent of any fraud perpetrated by Teasley in the sale in the stock.

In arriving at that conclusion we have not overlooked the statement made by Stewart in his testimony that Teasley was acting for Mitchell in the negotiations for the sale of the stock of the company, but he introduced no fact to substantiate that blunt statement, and the entire testimony in the case overwhelmingly refutes it. It follows that the court erred in overruling plaintiff's motion for a directed verdict in favor of plaintiff for the amount sued for, and which conclusion renders it unnecessary to determine any of the many other points discussed in brief.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside and to sustain the motion for a directed verdict in favor of plaintiff on another trial, if one should be had, and the evidence is substantially the same.