## Stewart v. Mitchell's Adm'x.

Oct. 12, 1945.

124

E. B. Wilson and James Gilbert for appellant.

C. K. Calvert and W. L. Hammond for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

This suit was brought by W. A. Mitchell against D. D. Stewart to recover $750 agreed to be paid as part of a compromise settlement in proceedings in bankruptcy of the Magnolia Coal Company, an Alabama corporation, whose entire stock was owned by C. B. Teasley, his wife and sister-in-law. Upon a plea of set-off issues were raised as to Teasley's fraudulent concealment and misrepresentation of the true conditions in the transactions in which Stewart acquired the stock of the corporation and agreed to assume the payment of Mitchell's claim, and others, against the Coal Company. The plaintiff died shortly after filing the suit and it was revived by his administratrix. The major issue was whether Teasley was Mitchell's agent so that his fraud relieved Stewart of his promise to pay Mitchell. We reversed a judgment in favor of Stewart, being of opinion that deceit and misrepresentation on the part of Teasley was

immaterial and could not relieve Stewart of his obligation to pay Mitchell, an innocent party. Mitchell's Adm'x v. Stewart, 296 Ky. 538, 177 S. W. 2d 872. Reference is made to the opinion for a full statement of the facts. We were of opinion that the court should have directed a verdict for the plaintiff, and, therefore, remanded the case.

Another trial was by the court without a jury. The finding and judgment were for the plaintiff. Stewart appeals.

The evidence was directed toward showing that Teasley was acting for Mitchell as well as for himself in the settlement, which, it may be assumed for the purpose of this case, was fraudulent as between Teasley, representing his corporation and its stockholders, and Stewart. As stated, both Stewart and Mitchell were creditors. Mitchell was also a major employee of the company. At the time the settlement was made he was in Pineville, Ky.

Stewart testified he had dealt only with Teasley and that before any agreement was made Teasley told him he wanted to discuss the matter fully with Curry and to get in touch with Mitchell; that he could not make a deal until they were both satisfied as they were all interested in the same thing. The court sustained an objection to this testimony, apparently because it was what a purported agent had said to establish his agency. The appellant insists that it is competent and bears upon the point of agency. Whether competent or incompetent, we do not read it as proof even of a claimed authority to act for Mitchell. Nor is there any proof in the testimony of Gil Wells, who had worked for Teasley under Mitchell's foremanship, that both before and after the transaction Mitchell had said time and again that if he could not get what Teasley owed him out of the settlement with Stewart, he would lose it. There is evidence of three witnesses, introduced through the defendant's affidavit for a continuance because of their absence, that Mitchell had stated to them that he had refused Teasley's request to go to Montgomery in the trial of the bankruptcy proceeding because he wanted to remain friendly with Stewart and that he had told Teasley "to be his representative down there if they could work out a settlement of his claim against the

Magnolia Coal Company, and said Teasley agreed to act for him (Mitchell) and represent him in any transaction that came up, and that in making the settlement with Stewart for $750. Teasley was representing Mitchell as his agent.''

On the other side is the testimony of Teasley that in the negotiations for compromise of his claims he declined to have anything to do with settling Mitchell's and Curry's claims and did not represent them. Curry, then present in Montgomery, testified that he talked with Mitchell over the telephone and he left the matter of settling his claim up to Curry, and that he, Curry, made a proposition to Stewart for Mitchell to take either $1,000 or $750 and a job, and that Stewart accepted the latter offer. The alleged breach of the contract of employment passed out of the case.

The finding of fact by the trial judge upon the contradictory evidence is accepted as that of a properly instructed jury and will not be disturbed by this court.

Another insistence of the appellant is that, regardless of proved agency, since Mitchell (and later his administratrix) seeks to reap the benefit of the fraudulent transaction, he cannot evade responsibility for the method by which those benefits were acquired. This is but the claim of an implied ratification of the unauthorized concealment by Teasley of his negotiations with Stewart of other indebtedness of the corporation, whose stock Stewart was taking over in order to satisfy his own claim. As applied to the law of agency, ratification is the affirmance of an act by one for or in behalf of another at a time when he had no authority to do the act for the one in whose name it was done. Under the distinctions in terminology drawn by the American Law Institute, this would be an ''affirmance,'' which is defined as a manifestation of an election by one on whose account an unauthorized act has been performed to treat the act as authorized. Restatement of the Law of Agency, section 83. We do not think Mitchell is to be held to have affirmed and acquiesced in the deceit of Teasley in respect of another independent and separate matter, of which Mitchell was ignorant and innocent, even though it resulted in collateral benefit to him. True, it is an established principal of law that where one with knowledge of material facts accepts or

retains the benefits of the efforts or acts of another acting for him, he is deemed to have ratified the methods employed for he may not, though innocent himself, receive the benefits and at the same time disclaim responsibility for the measures by which they were acquired. 2 Am. Jur., Agency, section 227; Crump v. Sabath, 261 Ky. 652, 88 S. W. 2d 665. The important consideration is that in concealing the fact of other debts of the company, Teasley did not purport or profess to be acting in behalf of Mitchell and other creditors. In order to sustain a plea of ratification, there must be some relationship, actual or assumed, of principal and agent between the person alleged to have done such act or made such contract. Nor can guilt of wrongdoing be imputed to Mitchell retroactively merely because he seeks to enforce his collateral contract right. One cannot be held liable for fraud and deceit of another although some of the fruits were obtained by him where he was ignorant of the wrongful act at the time he accepted its benefits and merely retains what appeared to be the legitimate proceeds of the transaction involved. 37 C. J. S., "Fraud," section 61b(2). It is not suggested that when Mitchell proposed to shave his claim and to agree to the dismissal of the bankruptcy proceeding, he knew of Teasley's misrepresentations as to an independent matter.

The judgment is affirmed.