Joseph B. KIRBY et al., Appellants,

v.

Clarence E. FRITH et al., Appellees.

Court of Appeals of Kentucky.

Jan. 31, 1958.

Rehearing Denied April 25, 1958.

Henry D. Hopson, Wallace & Hopson, Louisville, for appellants.

Felix Sanders, Jr., Louisville, Edwin R. Denney, Lexington, for appellees.

STEWART, Judge.

In this action Joseph B. Kirby and Jeanette M. Kirby, his wife, sought to recover damages of $4,000 from Clarence E. Frith and Thelma Frith, his wife, for alleged false representations made as to the condition of a house sold by the Friths to the Kirbys. At the conclusion of all the evi-

dence the lower court peremptorily instructed the jury to return a verdict for the Friths. The Kirbys appeal from the judgment entered.

The pertinent facts out of which this litigation grew are these: The Kirbys were in the market for a home, and, after looking around, they became attracted to a house located in the Iroquois Vista Subdivision to the City of Louisville. One Edwin B. Anshutz, a real estate agent employed by the Zettwoch-Fortner Corporation in Louisville, was a long time acquaintance of Charlton Gray, the son-in-law of the Kirbys, and through Gray the Kirbys were placed in touch with Anshutz. At the invitation of the Kirbys, Anshutz visited their apartment where he was asked if he could make arrangements for them to see the house and deal with its owner. Anshutz informed them he did not have the property listed but he knew the owner, Clarence E. Frith, and he felt he would work with another real estate agent in order to effectuate a sale.

The following morning Anshutz, the Kirbys and their daughter and son-in-law visited the property and spent some forty minutes in inspecting it. Joseph B. Kirby testified it was upon this occasion that Anshutz assured them that the house was constructed of first-class material, that it had a subfloor underneath the hardwood flooring, and that the sewage and plumbing facilities were adequate. Anshutz denied he made any of these representations, and further stated that, on the day he first went with them to the building, the Kirbys had already made up their minds to acquire the property and they merely wanted his assistance in writing up the offer of purchase. It is uncontradicted that the Friths neither made any warranties relative to the house nor had any knowledge of any guarantees the Kirbys attributed to Anshutz.

On July 14, 1955, at the Kirbys' request, Anshutz submitted their offer in writing to purchase the house. This offer was rejected by Clarence E. Frith. Two days later a modified contract to buy, signed by the Kirbys, was taken by Anshutz to the owners of the property which was accepted. Upon the closing of the transaction, the Friths paid a commission to the Zettwoch-Fortner Corporation, Anshutz' employer, of which sum Anshutz received one-half. Clarence E. Frith explained that it was a customary practice to remit the standard fee to any real estate broker who had secured a buyer for one of his properties.

Some months after the Kirbys moved into the building they began to experience considerable difficulty with the sewage system which appeared not to have been properly constructed, with the result that it had to be replanned and then rebuilt. Some damage was occasioned to the heating plant by sewage backing up under the house during the rainy season. It was also discovered that the structure had no subfloor. Thereupon, the Kirbys sued the Friths upon the assumption that a fraud had been perpetrated upon them by the misrepresentations of the sellers of the property as to the condition of the sewage system and the subfloor.

█ The Kirbys concede that, in order to hold the Friths liable, they must establish that a principal-agency relationship existed at all times between Anshutz and the Friths. In undertaking to accomplish this legalism, they rely upon the bald assertion of Joseph B. Kirby who testified that Anshutz was the agent of the Friths throughout their negotiations to acquire the property, and, upon the fact, too, that Anshutz received a commission from the Friths as the sole compensation for his services and, as a consequence, it is claimed they ratified his fraudulent acts.

█ The record in this case makes it clear beyond cavil that the Kirbys were the instigating parties in securing Anshutz as their agent to deal with the Friths for the acquisition of the house. His services apparently were only those of taking the Kirbys out to view the property and of trans-

mitting two offers of purchase to the Friths. There is not a shred of proof in this case that Anshutz acted even in a single instance upon the direction of the Friths. Therefore, the declaration of Joseph B. Kirby, unsupported as it is by any evidence that Anshutz was the agent of the Friths, is nothing more than a self-serving statement which must be rejected for the reason that it is a conclusion devoid of probative value.

■ Even assuming Anshutz ever became the agent of the Friths, such an event could not have occurred before the Kirbys' first offer to buy the property was submitted by Anshutz, and this was after the alleged fraudulent representations had purportedly been made by Anshutz to the Kirbys. The record shows Anshutz was not the agent of the Friths when the alleged false statements were said to have been made by him. It clearly appears the first contact the Friths had with Anshutz was when he notified them he had a buyer for their house. By that time the wrong, if any, which is complained of in this litigation had already been committed.

■ The Kirbys contend, however, that the Friths acquiesced in the deceit of Anshutz because they reaped the benefit of their agent's fraudulent conduct in the sale of their property. True, it is an established rule of law that where one, with knowledge of all the material facts surrounding the transaction, receives and retains the proceeds derived from the efforts of a person who acts for him, he is deemed to have ratified the methods employed to attain the result. Though innocent himself, one may not accept the fruits of a business deal and at the same time disclaim responsibility for the measures by which they were acquired. 2 Am.Jur., Agency, Sec. 227, p. 181.

■ The evidence here does not make out a case to which the above rule applies.

The Friths never made any statements of any character to the Kirbys; the latter relied throughout on the assurances, if any were given, of Anshutz. As has been shown, there was a complete failure of the proof to establish that the Friths knew Anshutz threw out any guarantees with reference to the property, which the Kirbys and their witnesses testified Anshutz made. We have also heretofore alluded to the fact that Anshutz was nothing more than an intermediary who was selected primarily by the Kirbys to take them to inspect the property and to present their offers to the Friths. These acts, according to Anshutz, were performed after the Kirbys had practically made up their minds to purchase the house. It would be an anomaly to adjudge ratification, in the light of what has been stated, when those supposed to ratify had no knowledge of the word, act or deed they were ratifying.

■■ The reasoning appearing in Stewart v. Mitchell's Adm'x, 301 Ky. 123, 190 S.W.2d 660, 662, controls the ratification issue. That case said: "One cannot be held liable for fraud and deceit of another although some of the fruits were obtained by him where he was ignorant of the wrongful act at the time he accepted its benefits and merely retains what appeared to be the legitimate proceeds of the transaction involved." The Stewart case also held that fraudulent conduct upon the part of an agent, where the principal was not a party to the wrong, may not be imputed retroactively to a principal merely because he seeks to enforce his legal rights under a contract the agent consummated.

As between the Kirbys and the Friths it is our view the Kirbys caused their own damage by relying exclusively upon Anshutz.

Wherefore, the judgment is affirmed.