McKinley SPARKS et al., Appellants,

v.

William WARD et al., Appellees.

Court of Appeals of Kentucky.

March 20, 1959.

Joe Hobson, Prestonsburg, for appellants.

C. Kilmer Combs, Combs & Combs, Prestonsburg, for appellees.

STEWART, Judge.

This action was instituted to cancel a surrender agreement, executed by appellants, five in number, along with other persons, to appellee, William Ward. If appellants' cause prevails on this appeal each of them will become reinvested with a fractional portion of the ownership of a gas well and also become entitled to share in the net income from its production during its existence. Additionally, an accounting was sought from Ward and one J. C. Kindred for the sale of gas from the well.

The grounds averred for cancellation of the surrender agreement in the complaint and amended complaint were (a) fraud practiced on appellants in its procurement; and (b) the forgery of the name of two of the appellants on the surrender agreement, whose signatures thereon caused the other three appellants, it is claimed, to execute it. The lower court ruled against appellants on both grounds, and this appeal challenges the correctness of the trial judge's ruling. Kindred died during the pendency of this suit, and no steps were taken to substitute the personal representative of his estate as a party defendant, so that only Ward is involved in this appeal as the chief party appellee.

A summary of the facts in this case is that on April 20, 1946, William Ward and Nancy Ward, his wife, executed and delivered unto J. C. Kindred an oil and gas lease on a small tract of land located in Johnson County. Kindred thereafter sold fractional interests in this lease to numerous other persons, reserving a small interest for himself, and appellants acquired their rights in

the leasehold from Kindred. Kindred, who appears to have been the acknowledged managing partner for all those interested in this venture, entered into a drilling contract with one Russell Worden, who completed the drilling of a gas well on November 7, 1946. The next day the well was shut in, the daily open flow then being 13,000 to 14,000 cubic feet. Small wells, such as this, are usually considered "dry holes" and are plugged.

A previous contract had been made by Kindred with Kentucky-West Virginia Gas Company to sell the gas from this well, provided it would yield a minimum open flow of 25,000 cubic feet per day; but, since the well's output per day was only a little more than half the volume specified by the contract, the gas company declined to take the gas. Kindred next undertook to sell gas from the well to the city of Paintsville, which was in close proximity to it, but the city already had an exclusive franchise for gas to be furnished to it and reported it was precluded from deviating from its existing agreement.

It appeared the only recourse was to plug the well, the estimated expense of doing which would approximate $2,000. With the idea in mind of salvaging something, Kindred devised a plan to sell the well to appellee, William Ward, for the cost of the pipe in the well, which amounted to $1,518.95. If Ward would agree to take over sole title to the well upon this condition, the lessees would not only recoup something for their outlay for installing pipe in the well but they would also be relieved of their plugging obligation.

It is undisputed that all the lessees agreed to the plan thus conceived by Kindred. When the latter approached Ward with this proposition, Ward agreed to accept it in order to have gas available for use in the houses on his farm and in order to protect his water wells from becoming contaminated with salt as a possible result of the plugging operation. An agreement to convey the lease back to Ward, dated November 14, 1946, was then drawn up by Ward's attorney which on its face was subsequently executed by each one owning an interest in the leasehold.

Ward made out checks to the various lessees of the gas well for their proportionate part of the $1,518.95 consideration paid by him. These he turned over to Kindred who then delivered them to the lessees, including appellants. Each check had written on its face "For ⅟₁₆ (or other fractional) Int. in gas well." All the checks were accepted, endorsed and cashed by the respective lessees.

After this agreement was consummated, Ward soon realized the well might produce more gas than he could consume for his farm needs. Accordingly, he contacted officials of the Paintsville Gas and Water Commission with the view of selling the excess gas to them for distribution in the city of Paintsville. After some negotiation, and after Ward agreed to incur certain expense, an arrangement was worked out whereby the commission commenced taking gas from him on December 18, 1946.

From December of 1946 through December of 1954, Ward received the sum of $12,614.12 for gas sold to the commission, less an operating cost of approximately $6,000 for the same period of time. On December 8, 1949, this action was instituted by appellants against Ward and Kindred wherein the surrender agreement was sought to be set aside for the alleged reason that it was secured by fraudulent representations made to them by Kindred, acting in conjunction with Ward. Both Kindred and Ward denied these averments.

There is not even a scintilla of proof in this case to the effect that Ward made a single statement to Kindred, the only person with whom he dealt when he acquired the surrender agreement from the lessees, which could be construed as a misrepresentation. Nor is there a single shred of evidence in the record which shows that Ward and Kindred, acting jointly, were guilty of collusive conduct which tended to bring

about the acts of appellants in releasing their rights under the leasehold. The testimony of both these men bears out the fact that Kindred went to Ward, presented his proposal simply and openly, and Ward accepted it. Their interests were diametrically opposite, and Ward dealt at arm's length with Kindred from start to finish. Even Kindred, his wife joining in, executed the surrender agreement along with appellants and the other gas well owners. The charge of misrepresentation as to Ward and also the charge of collusion upon the part of Ward and Kindred in the procurement of the surrender agreement are wholly unsupported by the evidence.

■■■■ It is contended Kindred was the agent of Ward in working out the surrender agreement. We do not agree. As has been stated Kindred was the managing partner or "trustee" of the other lessees. As such, he was the agent of the owners of the well, including appellants, and, in the trade he effected with Ward, he was acting for himself and for the other owners of the well. The proof seems to establish that he merely gave the other owners his opinion that the well could not be operated at a profit. His erroneous opinion was merely an estimate of future production and was not a fraudulent representation of a material fact. But even if it were, he was appellants' agent and not Ward's. Therefore, his misconduct, assuming he committed acts that amounted to such, could not be imputed to Ward. Kirby v. Frith, Ky., 311 S.W.2d 799.

It appears, in the course of this litigation, appellants lost faith in their reliance upon misrepresentation on Ward's part and collusion on Ward's and Kindred's part as grounds to sustain their efforts to cancel the surrender agreement. We make this statement for the reason that, after the proof taken in this case failed to bring to light any fraudulent acts as to Ward and Kindred in their dealings with the other lessees as regards the surrender agreement, appellants then changed the whole complexion of their cause of action. We

refer to the fact that they filed an amended complaint in which they alleged that neither McKinley Sparks nor Oakley Sparks, two of the appellants herein, signed the surrender agreement, under which Ward claims title to the gas well, and that the other three appellants herein signed this agreement believing the signatures of the two Sparks thereon were genuine.

As to this new issue raised, the evidence disclosed Kindred went to appellants, McKinley Sparks and Oakley Sparks, and each of them verbally agreed to the surrender agreement deal. Oakley Sparks was contacted first and he informed Kindred that McKinley Sparks or Fred Dickerson (secretary of Sparks Brothers Bus Company, owned by the two Sparks) would take care of signing the surrender agreement at Prestonsburg. Dickerson, a trusted employee of the Sparks for 17 years, later signed the names of the two Sparks to the instrument.

Both the Sparks denied they empowered Dickerson to write their signatures on the surrender agreement. Dickerson, however, when testifying, admitted the names of McKinley Sparks and Oakley Sparks appearing on the agreement were in his handwriting. When interrogated whether he was authorized to execute the instrument for them, he replied: "I don't believe I would sign anybody's name without asking them about it."

■■■■ According to Kindred's testimony, Dickerson affixed McKinley Sparks' name to the surrender agreement in the latter's presence and at his request. If Kindred's evidence is accepted as true, McKinley Sparks would be bound by the terms of the agreement. See Ledford v. Hubbard, 219 Ky. 9, 292 S.W. 345; Middlesboro Waterworks v. Neal, 105 Ky. 586, 49 S.W. 428, 20 Ky.Law.Rep. 1403; 16 Am. Jur., Deeds, sec. 95, p. 492; 26 C.J.S. Deeds § 34a, pages 662, 663. Even if Dickerson's acts were unauthorized at the time, the fact that both the Sparks later accepted, endorsed and cashed Ward's checks indisputa-

**464**

bly establishes a ratification of the surrender. agreement. See 2 C.J.S. Agency § 49, p. 1097, and 2 Am.Jur., Agency, sec. 227, p. 181.

The checks were plainly marked "For ⅜₆ Int. in gas well", and the acceptance by the Sparks of each payment manifested a clear intention to complete the transaction. Furthermore, they relinquished possession of the leasehold, and acquiesced in Ward's accepting the surrender agreement, taking over the well, spending other funds in equipping it, entering into a contract with the city of Paintsville, and operating the well for two and one-half years without objection. There could hardly be more convincing evidence to support the trial court's finding of ratification. See Francis v. Tipton, 180 Ky. 625, 203 S.W. 524.

We conclude, under the circumstances, there was no forgery of the names of the two Sparks on the instrument under consideration. Nor were the other three appellants induced by deceit to execute it.

Wherefore, the judgment is affirmed.