NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0682n.06

No. 13-5951

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Sep 02, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KNC INVESTMENTS, LLC, a California Limited Liability Company, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE EASTERN DISTRICT OF KENTUCKY |
| LANE'S END STALLIONS, INC., a Texas Corporation, | ) ) ) | |
| Defendant-Appellee. | ) | OPINION |

BEFORE: WHITE, DONALD, and O'MALLEY, Circuit Judges.[*]

**BERNICE BOUIE DONALD, Circuit Judge.** The instant appeal involving KNC Investments, LLC ("KNC") and Lane's End Stallions, Inc. ("Lane's End") arose following this Court's remand to the district court—via sealed per curiam order—to determine whether subsequent events mooted the issues KNC raised in its prior appeal, No. 12-5650. On remand, the district court found that no live case or controversy remained and accordingly granted Lane's End's motion to dismiss the case for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, we **AFFIRM** the judgment of the district court.

---

[*]The Honorable Kathleen M. O'Malley, United States Court of Appeals for the Federal Circuit, sitting by designation.

I.

Lane's End serves as Syndicate Manager for the owners of interests in the Lemon Drop Kid Syndicate ("the Syndicate"). Lemon Drop Kid is a Thoroughbred horse. The agreement establishing the Syndicate transferred ownership of Lemon Drop Kid from the original, single owner into syndicate form to provide for the horse's management and supervision. The Syndicate consists of forty equal fractional ownership interests ("Fractional Interests"). A holder of a Fractional Interest is an Owner. Each Owner has various rights under the agreement, including breeding Nominations.

On February 28, 2011, KNC purchased Fractional Interest No. A05 in the Syndicate from its previous Owner. At the time of this purchase, the Original Syndicate Agreement ("Original Agreement"), effective November 30, 2000, governed the rights and responsibilities of the Owners and the Syndicate Manager. The Original Agreement contained a procedure whereby thirty-four of the forty Owners of Fractional Interests could amend it.

After buying Fractional Interest No. A05, KNC became concerned about some of Lane's End's business practices. Those practices included Lane's End's making contracts related to the Syndicate in its own name, failing to segregate the Syndicate's assets from those of other syndicates managed by Lane's End, and handling of breeding Nominations.

On January 17, 2012, KNC filed suit against Lane's End, as Syndicate Manager, in the United States District Court for the Eastern District of Kentucky, asserting four claims and seeking declaratory relief, injunctive relief, and damages. In May of 2012, the district court granted Lane's End's motion to dismiss and denied KNC's motion for discovery. KNC appealed to this Court.

Before this Court adjudicated KNC's prior appeal, the other thirty-nine Owners of Fractional Interests in the Syndicate voted to amend the Original Agreement and expressly to ratify Lane's End's past actions as Syndicate Manager. Lane's End then sought to dismiss the appeal as moot based on the Amended Syndicate Agreement ("Amended Agreement"). This Court remanded to the district court to determine in the first instance whether the Amended Agreement mooted KNC's claims. On remand, the district court found that no live case or controversy remained and accordingly granted Lane's End's Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. KNC again appealed to this Court.

II.

A.

In granting Lane's End's motion to dismiss for lack of subject-matter jurisdiction, the district court decided only the question of whether KNC's claims are now moot in light of the Amended Agreement. Because the district court considered only the issue of mootness on remand, we confine our review to that issue. *Wright v. Holbrook*, 794 F.2d 1152, 1157 (6th Cir. 1986) ("[T]he general rule is that this court will not consider issues not raised in the district court."); *see also Norfolk & W. Ry. Co. v. City of Oregon*, 210 F.3d 372, at *4 (6th Cir. 2000) (Table) ("The district court limited its remand to that issue and, likewise, our review is similarly limited." (footnote omitted)).

We generally review de novo a district court's decision to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004). If the lower court, however, "does not merely analyze the complaint on its face, but instead inquires into the factual predicates for jurisdiction, the decision on the Rule 12(b)(1) motion

resolves a 'factual' challenge rather than a 'facial' challenge, and we review the district court's factual findings for clear error." *Id.* (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133-35 (6th Cir. 1996); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Lane's End's challenge to the existence of subject-matter jurisdiction in this case is a factual one because the district court analyzed the complaint in light of the Amended Agreement, which Lane's End contends deprives the court of a "factual predicate[]" for jurisdiction. *Id.* We therefore review the district court's factual findings for clear error and its legal conclusions de novo. *See Howard*, 382 F.3d at 636.

B.

This Court has stated that "'[t]he test for mootness is whether the relief sought would, if granted, make a difference to the legal interest of the parties.'" *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 348 (6th Cir. 2010) (quoting *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006)). The "heavy burden of demonstrating mootness" lies with the party claiming that the case is moot. *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 530-31 (6th Cir. 2001) (citing *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)). We agree with the district court that Lane's End met its burden to prove the mootness of this controversy in light of the Amended Agreement, which now expressly ratifies Lane's End's past conduct.

KNC's Complaint asserts four claims against Lane's End. Count I seeks a declaratory judgment, based on the Original Agreement, requiring Lane's End to segregate the Syndicate's funds and business dealings. Count II seeks a permanent injunction, based on the Original Agreement, to prevent Lane's End from commingling the Syndicate's funds or making Syndicate

contracts in the name of Lane's End. Count III seeks a declaratory judgment, based on the Original Agreement, requiring Lane's End to allocate excess Nominations to Syndicate Members and requiring Lane's End to give the Owners first priority to purchase any Nominations sold by the Syndicate. Count IV seeks compensatory and punitive damages for Lane's End's alleged violations of its fiduciary duties to the Owners under the Original Agreement. All the claims KNC brought in the district court therefore were based on the Original Agreement.

Events that transpired after KNC filed its Complaint, however, prevent it from asserting any claims under the Original Agreement. The other thirty-nine Owners of Fractional Interests in the Syndicate—all save for KNC—voted in May and June of 2012 to amend the Original Agreement. The Amended Agreement addresses the actions taken by Lane's End that KNC complains of in this litigation. Specifically, the language of the Amended Agreement expressly ratifies all of Lane's End's past actions regarding the handling of Syndicate funds, making contracts in the name of Lane's End, and allocating breeding Nominations. Kentucky law permits such ratification, even with the consent of a simple majority of the owners. *See Weisbord/Etkin/Goldberg v. Gainesway Mgmt. Corp.*, No. 2007-CA-000280-MR, 2008 WL 820950, at *5-6 (Ky. Ct. App. Mar. 28, 2008) ("The appellants provide no convincing authority in law or in the express language of the Agreement to support the view that such a post facto approval of the transfer of one share must be approved by all the members of the syndicate.").[1]

---

[1]We recognize that the *Weisbord* court reached this conclusion in a case where the syndicate agreement was not amended, which is different from the situation here. We cite this case only to demonstrate that the other Owners of Fractional Interests in the Syndicate were permitted under Kentucky law to ratify Lane's End's past conduct without KNC's consent.

Accordingly, the district court's factual conclusion—based on the affidavit submitted by Thomas Hyams, Secretary and Treasurer of Lane's End—that the other thirty-nine Owners in the Syndicate followed the proper procedures for ratifying Lane's End's prior actions is not clearly erroneous. KNC failed to present probative evidence to the district court rebutting Hyams' affidavit, and the Amended Agreement specifically ratifies all of Lane's End's past actions. This Court thus cannot grant any relief that "would . . . make a difference to the legal interest of the parties." *Wedgewood*, 610 F.3d at 348 (quoting *Ford*, 469 F.3d at 504) (internal quotation marks omitted).

## C.

KNC nonetheless contends that the district court committed two legal errors in granting Lane's End's Rule 12(b)(1) motion to dismiss. First, KNC argues that the district court failed to follow the mandate in our prior remand order, which KNC construes to contain a requirement that the district court decide disputed issues of material fact via the discovery process. Second, KNC argues that the other Owners' decision to amend the Original Agreement cannot moot its claim seeking compensatory and punitive damages for Lane's End's alleged violations of fiduciary duties to the Syndicate.

In remanding to the district court to determine in the first instance whether this case is moot, we neither held that there were disputed issues of fact nor required the district court to conduct discovery. In *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229 (6th Cir. 1981), this Court held that whether or not to allow discovery prior to deciding a motion to dismiss for lack of jurisdiction is within the discretion of the district court. *Id.* at 1240 ("A ruling by the trial court limiting or denying discovery will not be cause for reversal unless an abuse of discretion is

shown."). The instant case is analogous to *Chrysler Corp.* because KNC did not present any probative evidence to the district court to support its allegations that Lane's End acted improperly during the amendment process in May and June of 2012. *See id.* ("Inasmuch as Chrysler failed to offer any factual basis for its allegations of conspiracy, it was well within the trial court's discretion to deny Chrysler's request for discovery."). The district court therefore did not abuse its discretion in denying as moot KNC's discovery request.

KNC's second argument, that the amendment of the Original Agreement cannot moot its claim for damages regarding Lane's End's alleged breach of fiduciary duties, has some superficial appeal. Indeed, this Court has stated: "[W]here a claim for injunctive relief is moot, relief in the form of damages for a past *constitutional violation* is not affected." *Gottfried v. Med. Planning Servs., Inc.*, 280 F.3d 684, 691 (6th Cir. 2002) (emphasis added) (citing *Univ. of Tex. v. Camenish*, 451 U.S. 390, 393-94 (1981); *Powell v. McCormack*, 395 U.S. 486, 495-500 (1969)). Even where a past constitutional violation is at issue, however, "[t]he key question is whether [the plaintiff] has a *viable* claim for damages." *Id.* Setting aside the fact that KNC has not alleged a constitutional violation in this case, KNC's claim for damages is no longer viable in light of the Amended Agreement.

Although KNC correctly points out that the district court improperly relied on its own non-final order of dismissal to conclude that KNC's claim for alleged breaches of fiduciary duties was moot, that improper reliance does not constitute a reversible error. *See City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 251 (6th Cir. 1994) (citing *Hilliard v. U.S. Postal Serv.*, 814 F.2d 325, 326 (6th Cir. 1987)) ("[W]e may affirm on any grounds supported by the record, even though they may be different from the grounds relied on by the district court."). KNC's

claim is moot because the other Owners of Fractional Interests in the Syndicate expressly ratified

Lane's End's conduct in relation to KNC in the Amended Agreement. Therefore, KNC no

longer has a viable claim for damages.

III.

Accordingly, we **AFFIRM** the judgment of the district court.

**HELENE N. WHITE, Circuit Judge**, dissenting. The majority opinion concludes that KNC's claims against Lane's End are moot because the Amended Agreement "now expressly ratifies Lane's End's past conduct." Maj. Op. at 4. I respectfully dissent.

**I.**

KNC brought four claims: (I) for a declaratory judgment that Lane's End should be required to make all contracts related to the Syndicate "in the name of the LDK Syndicate" and that all monies received by Lane's End for the Syndicate should be deposited into a segregated, interest-bearing account; (II) for an injunction prohibiting Lane's End from commingling Syndicate funds with other funds and from making contracts related to the Syndicate in Lane's End's name; (III) for a declaration that Lane's End must allocate excess Nominations to Syndicate members and give Syndicate members priority consideration in the purchase of Nominations; and (IV) for damages based on Lane's End alleged breach of fiduciary duties in engaging in the conduct described in Counts I – III. The district court dismissed the claims and KNC appealed. During the pendency of the direct appeal, thirty-nine of the forty members of the Syndicate voted to amend the Syndicate Agreement and to ratify Lane's End's challenged conduct. The Amended Agreement makes its changes effective retroactive to the date of the adoption of the Original Agreement and purports to supersede that Agreement entirely. Lane's End filed a Notice of Suggestion of Mootness based on the Amended Agreement. Without reaching the merits of KNC's appeal, we remanded the case to the district court for a determination whether the Amended Agreement rendered KNC's claims moot.

On remand, the district court found that KNC's complaints regarding the sale of bonus nominations were moot because "thirty-nine of the forty Syndicate Owners ratified Lane's End's decisions." Op. at 2 (citing Section 6.16(f) of the Amended Agreement). The district court did

not specifically address Counts I and II. The district court rejected KNC's argument that its claims for monetary relief in Count IV are still alive, relying on its own prior dismissal of the claim. *Id.* at 3 ("[T]he breach of fiduciary duty claims were expressly dismissed and therefore, there can be no 'surviving' claim for damages stemming from those dismissed claims."). The district court also denied KNC's request for discovery.

In this appeal, KNC argues, first, that the district court failed to follow the mandate in the remand order, "which KNC construes to contain a requirement that the district court decide disputed issues of material fact via the discovery process." Maj. Op. 10. I agree with the majority that the remand order did not require the district court to permit discovery into the validity of the amendment and ratification process. I note, however, that to the extent the district court relied on its own prior dismissal of KNC's claim for damages to find the damages claim moot, it failed to comply with the mandate. Second, KNC argues that the amendment of the Original Agreement cannot moot its claim for damages regarding Lane's End's alleged breach of fiduciary duties.

## II.

As KNC acknowledges, its claims for declaratory and injunctive relief under the Original Agreement are moot because the Original Agreement no longer exists to enforce. But the Owners' adoption of the Amended Agreement does not necessarily moot KNC's claims for *damages* because this court can still redress a past violation of the Original Agreement by awarding damages. *See Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 348 (6th Cir. 2010) ("'The test for mootness is whether the relief sought would, if granted, make a difference to the legal interest of the parties.'") (citation omitted); *see also* 13C Fed. Prac. & Proc. Juris. § 3533.3 (3d ed.) ("Untold numbers of cases illustrate the rule that a claim for money damages is

not moot, no matter how clear it is that the claim arises from events that have completely concluded without any prospect of recurrence.").

Lane's End asserts, essentially, two reasons that the Amended Agreement nonetheless renders KNC's damages claims moot: (1) in the Amended Agreement, the Owners ratified, i.e., retroactively sanctioned, all the conduct of Lane's End that KNC claims was in violation of the Agreement and Lane's End's fiduciary duties; and (2) the Amended Agreement purports to supersede the Original Agreement entirely, as though it never existed.

## A. Ratification

The Original Agreement provides that "the relationship of the Owners to the Syndicate Manager [is] that of principal and agent." Under Kentucky law, a principal may ratify or affirm its agent's otherwise unauthorized conduct. *See Stewart v. Mitchell's Adm'x*, 190 S.W.2d 660, 662 (Ky. 1945) ("As applied to the law of agency, ratification is the affirmance of an act by one for or in behalf of another at a time when he had no authority to do the act for the one in whose name it was done."). "An otherwise-effective ratification eliminates claims that the principal has against the agent, including claims for breach of fiduciary duty." Restatement (Third) of Agency § 4.02(b). Accordingly, if KNC ratified Lane's End's conduct, all KNC's claims against Lane's End would be extinguished, and therefore moot, even claims for damages.

The Original Agreement provides that a vote of 34 out of 40 Owners may alter, amend, or modify the Agreement, and a simple majority of Owners may resolve "all questions properly submitted." The Owners' express statement in the Amended Agreement that they ratified Lane's End's conduct is undoubtedly effective to ratify the conduct on behalf of the Owners who participated in the vote to amend, but the question is whether it is effective with respect to KNC.

The majority opinion concludes that Kentucky law permits a simple majority of syndicate owners to ratify an agent's conduct on behalf of the remaining owners. Maj. Op. at 6 ("Kentucky law permits such ratification, even with the consent of a simple majority of the owners.") (citing *Weisbord/Etkin/Goldberg v. Gainesway Mgmt. Corp.*, No. 2007-CA-000280-MR, 2008 WL 820950, at \*5–6 (Ky. Ct. App. Mar. 28, 2008), for its observation that "[t]he appellants provide no convincing authority in law or in the express language of the Agreement to support the view that such a post facto approval of the transfer of one share must be approved by all the members of the syndicate."). But the quoted sentence in *Weisbord* was not a holding; it was dicta. In *Weisbord*, the plaintiffs challenged the sale of one member's Fractional Interest, arguing that in coordinating the sale, the Syndicate Manager had deviated from the terms of the Syndicate Agreement governing such sales. *Id.* at \*2. The court affirmed the dismissal of the plaintiffs' claims for declaratory and injunctive relief. It found, first, that the plaintiffs were estopped from challenging the sale because they themselves had sought a waiver from the terms of the Agreement. *Id.* at \*4. Second, it addressed the plaintiffs' argument "that the ratification was invalid because it was not approved by all the members of the syndicate, but was approved only by a majority." *Id.* at \*6. The court made the observation quoted above that the plaintiffs had provided "no convincing authority in law or in the express language of the Agreement to support the view that such a post facto approval of the transfer of one share must be approved by all the members of the syndicate." *Id.* And then in a footnote immediately following that observation, the court stated: "*Regardless of whether the appellants have a valid argument in this regard*, they are without remedy due to estoppel as we have explained above." *Id.* at \*6 n.3 (emphasis added). Thus, the observation the majority relies on would not bind subsequent Kentucky courts because it is dicta, *see Bd. of Claims of Kentucky v. Banks*, 31 S.W.3d 436, 439

n.3 (Ky. Ct. App. 2000), and because it appears in an unpublished decision, *see* Ky. St. RCP 76.28(4)(c). For a federal court sitting in diversity, like this one, the observation is a relevant data point, but is not controlling on its own. *See Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) ("When deciding a diversity case under state law," where the state's highest court has not decided the question, "a federal court must . . . ascertain the state law from 'all relevant data'" including "the state's appellate court decisions, . . . the state's supreme court dicta, restatements of law, law review commentaries, and the majority rule among other states") (citations omitted).

The Kentucky Supreme Court has applied the Restatement (Third) of Agency (2006) to questions of agency law, *see Pannell v. Shannon*, 425 S.W.3d 58, 84 (Ky. 2014) (citing §§ 4.01, 4.02 in a discussion of ratification), as well as American Jurisprudence, Second Edition, on Agency, *see Kindred Nursing Ctrs. Ltd. P'ship v. Leffew*, 398 S.W.3d 463, 467 (Ky. Ct. App. 2013) (stating that "Kentucky has adopted th[e] understanding of ratification" expressed in 2 Am. Jur. 2d *Agency* § 209 (2013)) (citing *Capurso v. Johnson*, 248 S.W.2d 908, 910 (Ky. 1952)). Under the Restatement, the Owners are "coprincipals," and lack the power to ratify their agent's conduct on each other's behalf. *See* Restatement (Third) of Agency § 3.14 ("[A]n agent for coprincipals acts for more than one principal in the same transaction or other matter. Coprincipals are not hierarchically stratified."); *see also id.* § 4.01 ("When there are two or more coprincipals, *each must ratify to be bound*.") (emphasis added). American Jurisprudence is in accord. *See* 3 Am. Jur. 2d *Agency* § 176 (2013) ("If a ratification would bind multiple principals, each must affirm with knowledge of the acts to be ratified.") (citing Restatement (Third) Agency § 4.06 cmt. b.); *see also Kindred Nursing Ctrs. Ltd. P'ship*, 398 S.W.3d at 467 (citing § 176 of Am. Jur. as authoritative on a question of agency law).

KNC did not vote to ratify Lane's End's conduct. To resolve the question whether the Owners' ratification is effective as to KNC, I would look to the authorities the Kentucky Supreme Court and Court of Appeals have relied on in published decisions rather than an unsupported, non-binding observation in an unpublished decision. According to those authorities, the Owners lacked authority to ratify Lane's End's conduct on KNC's behalf, and therefore, the Owners' ratification could not and did not extinguish KNC's claims for damages.

## B. Contract

I would also reject Lane's End's contention that the Owners' purported retroactive amendment of the contract moots KNC's claims for damages. Lane's End cites Kentucky decisions holding generally that a contract provision allowing for amendment of the contract is enforceable and binding, *see, e.g.*, *Kentucky Home Mut. Life Ins. Co. v. Leitner*, 196 S.W.2d 421, 423 (Ky. 1946); *Supreme Lodge K.P. v. Hunziker*, 87 S.W. 1134, 1135 (Ky. 1905), but neither party cites cases addressing whether a contract provision granting one-sided authority to amend can be reasonably construed to include authority to amend the contract *retroactively*.

Kentucky follows the general rule of enforcing contracts as written. *See Wehr Constructors, Inc. v. Assurance Co. of Am.*, 384 S.W.3d 680, 685 (Ky. 2012) ("'[A] written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence.") (quoting *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). No term in the Original Agreement confers on the Owners the power to *retroactively* change its terms. The Original Agreement provides that it may be "altered, amended, or modified" by thirty-four out of forty Owners, but says nothing about retroactivity, and the contract does not purport to govern the parties' *past* conduct. Under those circumstances, I see no basis to conclude that the Owners'

authority to amend the Original Agreement includes the additional extraordinary power to retroactively amend it to eliminate an Owner's accrued claim for damages. *Cf., e.g.*, *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 373 (6th Cir. 1999) (declining to give a merger clause retroactive effect "as no other provision of the later agreement even 'remotely intimate[d] that the parties ever contemplated so radical a retroactive renegotiation of their earlier agreements'") (quoting *Choice Security Sys., Inc. v. AT&T Corp.*, No. 97–1774, 1998 WL 153254, at \*1 (1st Cir. 1998) (unpublished)). To the extent that Lane's End argues that the Amended Agreement is probative of the Owners' understanding of the terms of the Original Agreement, that is not a contention that renders KNC's claims moot; it is an argument on one side of a live controversy.

I would VACATE the district court's mootness determination and reach the merits of KNC's appeal regarding Count III. In that regard, I would reverse the grant of the motion to dismiss as to the claim regarding nominations. The Syndicate Agreement is ambiguous on this issue, and further proceedings are appropriate.